IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

RENITA HILL, an individual,

    Plaintiff,

v.

WILLIAM HENRY COSBY, JR. aka
BILL COSBY, an individual,

    Defendant.

CIVIL DIVISION

Case No.: GD15-18156

**COMPLAINT**

Filed on Behalf of the Plaintiff

<u>Counsel of Record for this Party:</u>

George M. Kontos, Esquire
PA ID # 62712
gkontos@kontosmengine.com

Katie A. Killion, Esquire
PA ID # 205203
kkillion@kontosmengine.com

Kontos Mengine Law Group
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15222
(412) 709-6162

**<u>JURY TRIAL DEMANDED</u>**



IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYVLANIA

RENITA HILL, an individual,          CIVIL DIVISION

        Plaintiff,                   Case No.:

  v.

WILLIAM HENRY COSBY, JR. aka BILL
COSBY, an individual,

        Defendant.

### NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

    YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

    IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

ALLEGHENY COUNTY LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
11th Floor Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 261-5555

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

RENITA HILL, an individual,            CIVIL DIVISION

         Plaintiff,                      Case No.:

v.

WILLIAM HENRY COSBY, JR. aka BILL
COSBY, an individual,

         Defendant.

## COMPLAINT

AND NOW comes the Plaintiff, Renita Hill, by and through her attorneys, George M. Kontos, Esquire, Katie A. Killion, Esquire, and Kontos Mengine Law Group and files the following Complaint, and in support thereof, aver as follows:

### Jurisdiction and Parties

1. The Plaintiff, Renita Hill (sometimes hereinafter referred to as "Renita"), is an individual and a resident of the Commonwealth of Pennsylvania, County of Allegheny residing at 2773 Churchview Avenue, Pittsburgh, PA 15227.

2. The Defendant, William Henry Cosby, Jr. aka Bill Cosby ( sometimes hereinafter referred to as "Cosby"), is a citizen of the Commonwealth of Pennsylvania and maintains a residence at 8210 New Second Street, Cheltenham, PA 19027

3. Defendant Cosby is an internationally known comedian, actor and author. At the time of the factual allegations hereunder, Cosby was one of the most famous television personalities and entertainers in the United States.

4. This Court has personal jurisdiction over the Defendant because he is a resident of the Commonwealth of Pennsylvania and owns real property in the Commonwealth of Pennsylvania.

### Factual Timeline

5. Plaintiff incorporates by reference the prior paragraphs of this Complaint as though they were fully set forth at length.

6. In or about 1983, Renita Hill, who at the time was named Renita Chaney, first met Cosby when she was sixteen (16) years old at a local Pittsburgh establishment called "Froggy's Tavern". At the time, Renita was a high school student at Vincentian Academy in Pittsburgh, Pennsylvania.

7. Cosby was in the process of finding a co-host for an episode of the television show "Picture Pages", an educational children's television program hosted by Cosby and produced by Walt Disney Entertainment.

8. In his search for a cohost, Cosby invited Renita, as well as various other young, aspiring models and actresses, to Froggy's Tavern.

9. Cosby singled out Renita and chose her for a co-hosting position on the program.

10. Around the time of his choosing Renita to work on the Picture Pages program, Cosby also began communicating with Renita's parents. Cosby assured them that he had her best interests at heart, and further assured them that he was helping Renita with both her educational and career pursuits. He portrayed himself as a "mentor" to Renita.

11. Plaintiff accepted employment for the "Picture Pages" project and worked directly with Cosby on the program.

12. Shortly after Renita's acceptance of the position with Picture Pages, Cosby began to (as part of his "mentoring" of Renita) request that she meet him at various locations where he was performing. Such locations included Atlantic City, New York City, and Denver. It was at these various locations where the multiple abuses occurred, as further delineated below.

13. All of the travel and lodging arrangements for Renita were made by Cosby, or at Cosby's direction, and were paid for by Cosby.

14. Cosby's first abuse of Plaintiff occurred when she was still in high school, during a trip to Atlantic City, New Jersey.

15. Over the course of the next several years, Cosby continued abusing Plaintiff. During this time-span, Cosby offered to and paid for Renita's college education at both Temple University in Philadelphia, Pennsylvania, and Spelman College in Atlanta, Georgia. He also paid for her apartment during her second year of study at Spelman College.

16. These abuses continued until Renita's completion of her second year at Spelman College, when she decided to no longer meet with Cosby or have any further contact with him.

17. Cosby's funding of Renita's education ended with her refusal to further meet with him.

### The Abuses and Cosby's Modus Operandi

18. During the years of abuse, which lasted approximately from 1983 to 1987, Cosby engaged in a consistent and deliberate pattern and methodology to effectuate his sexual abuse of Renita. Such pattern, or *modus operandi*, included but is not limited to the conduct enumerated below, as follows:

   a. Cosby would pay to have Plaintiff flown to a city where he was conducting business or performing in a show. He would arrange for a separate hotel room to be reserved for Plaintiff, for which he paid. This occurred most often in Atlantic City.

   b. Upon arrival to her hotel room, Renita would be provided some form of alcoholic beverage to be consumed as soon as she arrived. For example, on her first trip to Atlantic City, Cosby had a bottle of champagne on ice waiting in Renita's hotel room.

   c. Once Cosby finished his show, or business, Renita would be summoned to his room. Once there, Cosby would hand Renita a glass with some form of liquid in it and instruct her to "drink that."

   d. Renita would comply with the instruction of Cosby to drink the liquid, as he was a powerful figure both to her personally, as her "mentor," and more generally, as a revered and beloved actor and entertainer.

   e. On the majority of these occasions, upon imbibing the drink, Renita would lose consciousness and wake up in her room the next day, oftentimes nude, disheveled, confused and disoriented.

19.  The first time this happened, in Atlantic City, Renita was unsure of exactly what had taken place due to her young age and inexperience with alcoholic beverages. She assumed that she perhaps drank too much, became inebriated and "blacked out."

20.  However, it soon became clear to Renita that she was being assaulted and taken advantage of during these occasions, and that she was not just "blacking out" from alcohol intake.

21.  Upon information and belief, Plaintiff asserts that the drinks provided to her by Cosby contained drug(s) that affected her consciousness, memory and perception, such that she would be rendered in a semi-conscious or unconscious state.

22. While she was in this semi-conscious or unconscious state, Renita was sexually assaulted by Defendant Cosby.

23. After the first few instances of abuse, Renita informed Cosby that she did not want to imbibe the drinks that he made her anymore because doing so made her uncomfortable. In response, Defendant Cosby instructed her that if she did not imbibe in the drinks he made her, she would be prevented from attending the trips and his purported tutelage of her would end. In this respect, Cosby bluntly told her: "If you don't drink the drink, you can't come."

24. On one instance in Atlantic City, Renita was given a drink (that she believes did not have an "adequate" amount of the drug in it to make her fully lose consciousness). Consequently, Renita distinctly remembers Cosby kissing her, touching her vaginal area and her breasts. She specifically recalls Cosby becoming angry when she commented on his cigar breath. Renita subsequently woke up naked in her hotel room the next day.

25. The aforementioned pattern happened numerous times over the course of several years, starting when Renita was a minor and continuing until the completion of her second year at Spelman University.

26. Cosby was extremely powerful, wealthy and influential in status. Renita was young, impressionable, and seemingly powerless. It was apparent to Renita that taking on such a powerful figure with such allegations would exact a severe emotional toll that she was incapable of undertaking. Also, she had no idea at that time of the many other woman who would ultimately come forward and share their similar experiences with Cosby.

27. Consequently, Renita was too intimidated and afraid to come forward with the abuses around the time during which they occurred.

## Other Abuse Allegations Surface

28. For approximately twenty (20) years, Renita remained silent and did not reveal these abuses to any government authorities or to the public.

29. In 2005, a woman named Andrea Constand came forward and revealed publicly that Cosby had given her pills that reduced her consciousness and then he sexually assaulted her.

30. On or about March 8, 2005, Ms. Constand filed a civil complaint to this effect, alleging a fact pattern very similar to the abusive and manipulative actions Cosby had taken against Renita some twenty years earlier. Said civil complaint was filed in the Eastern District of Pennsylvania and had a case number of 05-CV-1099.

31. The civil complaint alleged that thirteen other woman, listed as Jane Doe witnesses, had similar experiences as Ms. Constand's. However, these woman were never able to testify because Ms. Constand settled with Cosby in November 2006.

32. Between the time of the civil complaint filing and the settlement, several woman had come forward revealing similar sexual abuses against them by Cosby, including Barbara Bowman, Beth Ferrier, and Tamara Green. However, upon the settlement of Ms. Constand's civil action, further action was not taken by these woman at the time.

33. For approximately eight (8) more years, there was relative silence pertaining to the public exposure of Cosby's conduct.

34. On or about November 13, 2014, Barbara Bowmen penned an op-ed in the Washington Post titled "Bill Cosby raped me. Why did it take 30 years for people to believe my story?", in which she detailed the sexual abuses that occurred in the 1980s and essentially urged the public to pay more attention to the abuse allegations that had originally been exposed eight years earlier.

35. Over the next several days, more accusers began to come forward, alleging very similar instances of being drugged and sexually abused. Such accusers include Joan Tarshis, Linda Joy Traitz, Janice Dickinson, Carla Ferrigno, Louisa Moritz, and Theresa Serignese.

### Renita Comes Forward

36. Emboldened by the bravery and candor of the above-mentioned women, and realizing that their experiences with Cosby were nearly identical to her own, Renita finally came forward and shared the story of her experiences with Cosby. She did so in an interview with KDKA reporter Ralph Iannotti, on November 20, 2014.

37. In the interview, Renita revealed much of the above-mentioned fact pattern and explained that she felt compelled to come forward after hearing Cosby's criticize the other woman who came forward.

### Cosby Retaliates

38. On or about November 21, 2014, in response to the multiple public statements, including Plaintiff's interview, accusing him of sexual abuse and rape, Cosby, aided by his attorney, Martin Singer, issued the following statement (henceforth referred to as the "Martin Singer Statement"):

> The new, never-before-heard claims from women who have come forward in the past two weeks with unsubstantiated, fantastical stories about things they say occurred 30, 40, or even 50 years ago have escalated far past the point of absurdity.
>
> These brand new claims about alleged decades-old events are becoming increasingly ridiculous and it is completely illogical that so many people would have said nothing, done nothing, and made no reports to law enforcement or asserted civil claims if they thought they had been assaulted over a span of so many years.
>
> Lawsuits are filed against people in the public eye every day. There has never been a shortage of lawyers willing to represent people with claims against rich, powerful men, so it makes no sense that not one of these new women who just came forward for the first time now

> ever asserted a legal claim back at the time they allege they had been sexually assaulted.
>
> This situation is an unprecedented example of the media's breakneck rush to run stories without any corroboration or adherence to traditional journalistic standards. Over and over again, we have refuted these new unsubstantiated stories with documentary evidence, only to have a new uncorroborated story crop up out of the woodwork. When will it end?
>
> It is long past time for this media vilification of Mr. Cosby to stop.

39. At all relevant times, Attorney Singer acted as an agent, authorized representative, lawyer, servant, and/or employee of Defendant Cosby, acting within the course and scope of his employment and/or agency, and with the full authorization, knowledge and consent of Cosby.

40. The Martin Singer Statement was given to The Washington Post for use in an article that was published on November 22, 2014 titled "Bill Cosby's legacy, recast: Accusers speak in detail about sexual-assault allegations," which provided the then-known history of the accusations by the multiple women against Defendant Cosby over the course of the past decade.

## Cosby Speaks

41. On or about that same day, in an interview with Florida Today, Cosby himself was quoted as follows (henceforth referred to as the "Florida Today" statement):

> "I know people are tired of me not saying anything, but a guy doesn't have to answer to innuendos. People should fact-check. People shouldn't have to go through that and shouldn't answer to innuendos."

## Camille Cosby Speaks

42. On December 15, 2014, Defendant Cosby's wife, Camille Cosby, who was also Cosby's business manager, and acting on her husband's behalf in that regard, released a letter (henceforth referred to as the "Camille Cosby Statement") published by the Washington

Post, questioning the honesty of the victims who had come forward, stating that "[T]here appears to be no vetting of my husband's accusers before stories are published or aired."

43. In an apparent attempt to cast further doubt on the honestly of Defendant Cosby's accusers, Camille Cosby also compared the accusations to alleged rape accusations at the University of Virginia, which eventually were proven to have been fabricated.

44. All of the above-mentioned statements were made in public and were publicized nationwide.

45. The statements made by Defendant's attorneys, representatives, publicist, servants, agents, and/or employees are attributed to and are treated as being made by Cosby himself. Such assertion is further evidenced by a July 23, 2015 quote by one of Defendant Coby's attorneys, Monique Pressley, in which she stated that ". . . [W]hen his attorneys speak, we're speaking for him."

46. During the same statement, which was uttered and/or broadcast in an interview with CNN, Attorney Pressley also stated that "Through his attorneys, Cosby from the beginning has denied repeatedly the accusations and allegations that have been lodged against him . . . [S]o when we speak and say that he denies all of the allegations and accusations, then that is the statement of Bill Cosby."

### COUNT I
### RENITA HILL –vs- WILLIAM HENRY COSBY, JR aka BILL COSBY
(Defamation/Defamation per se)

47. Plaintiff incorporates by reference the allegations of all the preceding paragraphs as if fully restated herein.

48. The Martin Singer Statement, Florida Today statement, and the Camille Cosby Statement (referred herein collectively as the "Retaliatory Statements") were defamatory.

49. It was reasonably foreseeable that the Retaliatory Statements would be published by the news media and that such Statements would garner national attention.

50. Cosby knew that these Statements were false at the time the statements were spoken and/or published and/or broadcast.

51. The Statements were made and broadcast with the intent to paint Renita; and the other woman who had come public with allegations and accusations of sexual abuse, as liars. Said statements explicitly provide that the women's stories are "unsubstantiated," "fantastical," and "absurd," among other derogatory descriptions. The statements also imply that the women were merely coming forth with the abuse stories in order to extort money from Cosby.

52. These Statements calling Plaintiff a liar and implying that she is an extortionist to the public at large were highly offensive to Renita.

53. The Statements constitute defamation *per se*, as they were broadcast by Defendant with actual malice. In the alternative, said Statements were made with wanton disregard for the truth and welfare of the Plaintiff.

54. As a direct and proximate result of the defamatory acts of the Defendant set forth above, Plaintiff has suffered harm to her reputation and emotional pain and suffering, including but not limited to:

      a. Mental anguish;
      b. Depression;
      c. Anxiety;
      d. Humiliation;
      e. Isolation; and
      f. Other injuries, the full extent of which are unknown.

55. As a result of Defendant Cosby's actions, The Plaintiff has incurred the following damages:

    a. She has suffered and may continue to suffer pain, suffering, mental anguish and embarrassment;

    b. She has sustained a loss of earnings and earning capacity;

    c. She has incurred significant medical bills for treatment;

    d. She has incurred bills for medication;

    e. She has suffered a loss of the enjoyment of life's pleasures; and

    f. Other damages, the full extent of which are unknown at this time.

56. WHEREFORE, the Plaintiff, Renita Hill, respectfully demands judgment in her favor and against the Defendant, William Henry Cosby, Jr. aka Bill Cosby, in an amount in excess of the applicable arbitration limits.

## COUNT II
### RENITA HILL –vs– WILLIAM HENRY COSBY, JR aka BILL COSBY
(False Light)

57. Plaintiff incorporates by reference the allegations of all the preceding paragraphs as if fully restated herein.

58. The Retaliatory Statements were highly offensive to Plaintiff and portrayed her in a false light.

59. The Retaliatory Statements were made in such a way that Defendant Cosby knew or should have known that such statement would become communicated to the public at large, as such statements were communicated to media outlets.

60. The Defendant knew or should have known that the Statements were false or recklessly disregarded the falsity of said statements.

61. The Defendant knew and intended that the Statements would cast Plaintiff in a false light by creating the false impression that Plaintiff was a liar and was lying about the sexual abuses. Said statements also implied that Renita was attempting to extort Cosby for money.

62. Naturally, these Statements calling Plaintiff a liar and implying that she is an extortionist to the public at large were highly offensive to Renita.

63. By reason of this conduct by Defendant, Plaintiff has suffered damage to her reputation, hurt feelings, mental anguish, emotional distress, embarrassment and great humiliation, as well as the other damages enumerated above, which are incorporated herein by reference.

WHEREFORE, the Plaintiff, Renita Hill, respectfully demands judgment in her favor and against the Defendant, William Henry Cosby, Jr. aka Bill Cosby, in an amount in excess of the applicable arbitration limits.

## COUNT III
### RENITA HILL –vs- WILLIAM HENRY COSBY, JR aka BILL COSBY
(Intentional Infliction of Emotional Distress)

64. Plaintiff incorporates by reference the allegations of all the preceding paragraphs as if fully restated herein.

65. Defendant Cosby's actions of drugging Renita and then sexually abusing her while she was in a vulnerable and unconscious or semi-conscious state of mind were egregious in nature.

66. Defendant Cosby's choice to disseminate the Retaliatory Statements and thus falsely tell the world, explicitly and implicitly, that Renita is a liar and extortionist constitutes extreme and outrageous conduct.

67. Defendant Cosby knew that his actions of sexually abusing Plaintiff and then later spreading defamatory statements about her would cause Renita significant emotional distress.

68. The retaliatory, defamatory statements directed at Plaintiff were intended to cause Renita severe emotional distress. Alternatively, these actions were undertaken with reckless disregard to Plaintiff's emotional and mental well-being.

69. As a direct and proximate cause of Defendant Cosby's conduct, Renita has suffered and will continue to suffer humiliation, mental anguish, emotional distress, embarrassment, and the other damages enumerated above, which are incorporated below by reference.

WHEREFORE, the Plaintiff, Renita Hill, respectfully demands judgment in her favor and against the Defendant, William Henry Cosby, Jr. aka Bill Cosby, in an amount in excess of the applicable arbitration limits.

Respectfully submitted,

*s/ George M. Kontos*
George M. Kontos, Esquire
Counsel for Plaintiff

## VERIFICATION

The undersigned, Renita Hill, has read the foregoing Complaint and hereby swears that the averments contained therein are, insofar as they are derived from her knowledge, true and correct to the best of her knowledge, information and belief, and insofar as they are derived from others, such facts are believed to be true and correct.

This statement and verification is made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities, which statute provides that false statements are subject to criminal penalties.

Date: 10/14/15

_____
Renita Hill