IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENITA HILL, an individual, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 2:15-cv-01658-AJS ) ) |
| WILLIAM HENRY COSBY, JR, aka BILL COSBY, an individual, | ) ) ) |
| Defendant. | ) **JURY TRIAL DEMANDED** |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

AND NOW COMES Plaintiff, Renita Hill, by and through her counsel, George M. Kontos, Esquire, Katie A. Killion, Esquire, and Kontos Mengine Law Group, and files the following Brief in Support of her Response in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim, as follows:

**I.    SUMMARY OF THE ARGUMENT**

Plaintiff filed a three-count Complaint alleging defamation, false light, and intentional infliction of emotional distress ("IIED"). All three counts revolve around three statements published by Defendant, William H. Cosby, Jr. (hereinafter sometimes referred to as "Cosby"), either directly or through agents, in retaliation for Plaintiff revealing past sexual assaults committed by Cosby to the public. Cosby's Motion to Dismiss Count I of Plaintiff's Complaint is centered on three arguments. One, that the statements alleged to be defamatory are not actionable because they are either privileged opinion or lack defamatory meaning. Two, that the statements were not "of and concerning" Plaintiff. And last, that Plaintiff failed to allege that the statements made by Cosby's representatives were made with actual malice. Cosby moved to

1

dismiss the false light count on the same grounds as the defamation count. He also moved to dismiss the IIED claim based on an assertion that the actions taken by Defendant did not constitute "outrageous" behavior.

Cosby's Motion should fail in all respects for the following reasons. First, the defamatory statements at issue do not constitute "pure," opinions as they rely on undisclosed facts. Such facts include the implication that Plaintiff knew she had not been assaulted and that she is an opportunistic liar who is attempting to extort money from Cosby. It is upon these implied facts which Cosby's denial statements are based. The statements themselves are defamatory because they imply that Plaintiff lied about being sexually assaulted. Such a sentiment would lower her standing in the community. Second, the statements themselves were "of and concerning" Plaintiff because she was a member of a very small group of women to whom the statements could possibly be directed. Third, the Plaintiff is neither a public figure nor was the situation a "public controversy" as defined by Pennsylvania case law. Fourth, reading Plaintiff's Complaint as a whole, Plaintiff does, in fact, explicitly allege that the statements were made with malice and/or reckless disregard for their truth. Finally, the conduct of Cosby was alleged, both explicitly and implicitly, to constitute "extreme and/or outrageous" behavior.

Taking of the facts as true and allowing for any implied meanings to be drawn from Plaintiff's Complaint, it is clear that an action for defamation, false light, and IIED have been sufficiently plead.

## II.      FACTUAL BACKGROUND

Defendant Cosby is an internationally known comedian, actor and author who was, and remains, one of the most famous television personalities and entertainers in the United States. It is alleged by Plaintiff that Cosby committed various acts of sexual abuse, more fully described in

Plaintiff's Complaint, ¶¶ 18-27.

Over twenty years later, several women came forward and publically accused Cosby of sexually abusing them in a manner very similar to the abuses of Renita Hill. Seven of these women are specifically named in Plaintiff's Complaint as coming forward to speak out about Cosby, beginning on November 13, 2014.[1] *Plaintiff's Complaint*, ¶¶ 34, 35. Emboldened by these women, Ms. Hill also publically disclosed the abuses of her by Cosby in a televised interview with KDKA reporter Ralph Ianotti on November 20, 2014.

In reaction to the multitude of public allegations coming out about him, Cosby, by himself and through his agents, retaliated by publishing statements designed to bring into question the validity of the women's honesty and motivations. Beginning on November 21, 2014, Cosby's attorney, Martin Singer, issued a statement that was published in the Washington Post (the "Martin Singer Statement"). *Plaintiff's Complaint,* ¶ 38. On the same day, Cosby himself issued a statement during an interview with Florida Today (the "Florida Today Statement"). *Plaintiff's Complaint,* ¶ 41. About a month later, on or about December 15, 2014, Cosby's wife and business manager, Camille Cosby, wrote a letter that was published in the Washington Post (the "Camille Cosby Statement"). *Plaintiff's Complaint*, ¶¶42, 43. These statements and the implications deriving from them are alleged by Plaintiff to be defamatory.

Plaintiff has alleged that Cosby knew that Plaintiff's accusations were true when he, both through himself and by and through spokespersons, released the above-described defamatory statements (collectively referred to in the Complaint as the "Retaliatory Statements"). Each issuer of the statements, whether it was Cosby or his agents, knew or should have known that the allegations were true at the time the statements were made. *Plaintiff's Complaint,*¶¶ 50, 53, 60.

---

[1] These women include the following: Barbara Bowmen, Joan Tarshis, Linda Joy Traitz, Janice Dickinson, Carla Ferrigno, Louisa Moritz, and Theresa Serignese.

**III.    STANDARD OF REVIEW FOR MOTION TO DISMISS**

The standard for dismissal for a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is well settled. The defendant has the burden of showing that no claim has been presented. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005). All material allegations must be accepted as true and construed in a light most favorable to the non-moving party. *Rocks v. City of Philadelphia*, 686 F.2d 645 (3d Cir. 1989). The granting of a dismissal by result of a 12(b)(6) motion is highly disfavored. *Kurorolya v. United States*, 37 F.Supp. 2d. 717, 722 (E.D. Pa. 1999). Unless amendment would be futile, dismissal with prejudice should not be granted but rather leave to amend should be granted. See *Chemtech Intern, Inc. v. Chemical Injection Technologies, Inc.,* 170 Fed. Appx. 805 (3d Cir. 2006).

To survive a motion to dismiss, the plaintiff need only "allege facts sufficient to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). The complaint must include enough facts to state a claim to relief that is plausible on its face. *Id.* at 1974. This allows for either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory. *Id.* at 1969. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**IV.    ARGUMENT**

    **A.    Pennsylvania Law Applies to this Case.**

For the purposes of this Response, Plaintiff agrees that Pennsylvania law should apply to this Court's analysis.

    **B.    COUNT I: Plaintiff's Complaint Contains Sufficient Facts to Sufficiently Support a Claim for Defamation.**

4

>   *i.*   *The Statements Which Are Alleged to be Defamatory in Plaintiff's Complaint Are Not "Pure" (i.e., Protected) Opinions and Are Defamatory.*

Cosby's reason for dismissal based on the statements themselves is two-fold. One, he asserts that because the Retaliatory Statements are his opinions, they are constitutionally protected. He also asserts that the statements were not capable of defamatory meaning.

It is the Court's duty to determine if a publication is capable of defamatory meaning. *MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 125 (1996). While the complained-of language must be read in context with the entire article or statement, a small portion of such language may be defamatory even if it was not the focus of the article or statement. *Id.* at 126. An opinion can be capable of defamatory meaning if it could "reasonably be understood to imply the existence of undisclosed defamatory fact justifying the opinion." *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001). When a statement can reasonably be interpreted as ***stating or implying a false fact***, the issue should be placed before a jury (emphasis added). See *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990).

Defendant relies heavily on *Tilli v. Spaziani,* a Northampton County Court of Common Pleas decision from 1985. 42 Pa. D. & C.3d 100 (Pa. Com. Pl. 1985), *aff'd*, 517 A.2d 1369 (Pa. Super. Ct. 1986). The precedential value from such a holding is questionable. But even assuming that it does have some precedential value, the case does not support Defendant's claim that his statements were mere opinions, as the analysis used in *Tilli* actually yields a very different result when applied here. Cosby, in his Brief, omits the portion of the *Tilli* opinion that outlines the framework which should be used when determining whether a statement is protected opinion. The court in *Tilli* opines that there are two types of opinions: pure and mixed. *Id.* at 105. A pure opinion is privileged and occurs when the statements in question contain the facts upon which

the opinionated assertions in question are based. *Id.* (citing *Braig v. Field Communications*, 310 Pa. Super. 569 (1983)). A mixed opinion, on the other hand, is actionable and occurs when the statement in question is based on an implicit allegation of undisclosed, defamatory facts or innuendo. *Id.* In *Tilli*, the statements at issue were written in a letter and clearly set out, in precise details, the facts upon which the statements were based. The court put great emphasis on the fact that the letter contained "complete and detailed" facts and that the defendant "set forth in detail the reasons for his opinion of plaintiff." *Id.* at 106. As opposed to the situation in *Tilli,* all of the statements at issue in the case at hand are based on several undisclosed innuendos and defamatory facts.

For example, the Martin Singer Statement relies on undisclosed facts to imply that the Plaintiff acted with opportunism and greed, by fabricating that she was the victim of the sexual assaults. The opportunism and greed are denoted by the portion that states "[T]here has never been a shortage of lawyers willing to represent people with claims against rich, powerful men." Likewise, the use of the words "unsubstantiated, fantastical stories" within the context of the Martin Singer Statement suggests that undisclosed facts exist which would establish that the Plaintiff concocted a "story" or fantasy, as opposed to something that she actually experienced. Cosby (through Singer) then sets forth the question of why "so many people would have said nothing, done nothing, and made no report to law enforcement." The implied answer, via subtext and implication: there exists undisclosed facts which evidence a falsification and fabrication by the Plaintiff. Taken as whole, the Martin Singer Statement is a far cry from the very detailed, point-by-point factual analysis that the Defendant in *Tilli* penned in response to a critical editorial of his client. The thrust of Cosby's opinion is that Plaintiff is an extortionist and a liar, but he does not come out and explicitly provide any factual support. Thus, he is relying on

undisclosed, defamatory facts and innuendos.[2]

The same analysis and reasoning applies to the other two defamatory statements as well. In the Camille Cosby Statement, the statement that "[T]here appears to be no vetting of my husband's accusers before stories are published or aired" does not explicitly state the facts upon which such assertion is based. What is more, she then goes on to link Cosby's situation to the infamous and highly publicized rape scandal at the University of Virginia. There, the allegations of rape were (she notes) "proved to be untrue." The undisclosed, implied facts referenced by her is that Cosby is also the victim of unvetted accusers and if the media would only vet, explore, and investigate them, they would find the same thing: that Plaintiff's claims have likewise been fabricated.

The Florida Today Statement also makes use of innuendo and undisclosed facts to create the impression of fabrication. "A guy doesn't have to answer to innuendos. People should fact-check" puts forth the idea that if people actually did "fact-check," they would find (by way of information he does not disclose) that the claims are untrue.[3]

All three statements share a common thread of relying on undisclosed, defamatory facts to support the assertions each statement makes. If it is reasonable to infer from the statements that Defendant was actively and knowingly calling Plaintiff a liar and an extortionist, than the statements are capable of defamatory meaning. See *Thomas Merton Center,* 442 A.2d at 467. At this stage, all that is necessary is for the Court to determine if the statements issued by Cosby

---

[2] Looking at the same statement by Martin Singer, the District Court in *Green v. Cosby* found that there is sufficient factual questions as to the meaning readers would give to the statement that would preclude dismissal at this stage. *Green v. Cosby*, CV 14-30211-MGM, 2015 WL 5923553, at *9 (D. Mass. Oct. 9, 2015) (addressing the same exact statement and determining that it relied on undisclosed facts).

[3] Defendant's characterization of the Florida Today Statement as only concerning the heckling by people attending Cosby's shows is unfounded. To the extent that there was any issue with respect to hecklers, such instances were brought about by the budding controversy reignited by Barbara Bowmen's November 13, 2014 op-ed in the Washington Post entitled, in part, "Bill Cosby Raped Me," as well as several other women who had come forward, including Plaintiff, prior to him making the statement.

7

could fairly and reasonably be construed to have the meaning imputed to the innuendo that Plaintiff is a liar and/or an extortionist. See *Sarkees v. Warner-W. Corp.,* 37 A.2d 544, 546 (Pa. 1944). Whether someone actually lied or extorted, such as falsely accusing someone of sexual assault, is a factual determination and not one of opinion. The phrasing used in Cosby's statements imply that there was some unidentified investigation into the Plaintiff's allegations by Cosby and such investigation revealed Plaintiff's allegation to be false. Such implication is, on its face, an undisclosed fact upon which the "opinionated" statements were based.

Cosby also argues, in addition to claiming that his statements are privileged opinions, that the statements are not capable of defamatory meaning. It is up to the Court to decide whether a statement is capable of defamatory meaning and up to the jury to decide whether recipients of the statements have understood it to be defamatory. *Mzamane v. Winfrey,* 693 F. Supp.2d 442, 479 (E.D. Pa. 2010). A claim for defamation may exist where the words themselves are not defamatory in nature, but the context in which the statements are issued creates a defamatory implication, i.e., defamation by innuendo. *Thomas Merton Center v. Rockwell Intern. Corp.,* 442 A.2d 213 (Pa. 1981).

Contrary to Cosby's claims, his statements did not merely allege that her allegations were unsubstantiated and groundless. Instead, Plaintiff plead that the statements, taken together and read in context, imply the she, as a person, lied about the sexual assault and was trying to extort Cosby. It is easy to recognize that such statements are reasonably capable of carrying a defamatory meaning, because to falsely accuse someone of sexual assault is morally repugnant and would obviously lower Plaintiff's standing in the community. Whether these statements did in fact lower her standing in the community is best decided through the discovery process and a jury. The statements, taken as true, are defamatory and capable of harming Plaintiff's reputation.

It is important to recognize that, for the purposes of this Motion, all accusations of the Retaliatory Statements being knowingly false must be assumed to be accurate. Defendant claims that the Retaliatory Statements were made "in response" to the public allegations made by Plaintiff and other women. He indicates that the statements made were opinions, and as opinions are protected from any legal consequences. This reasoning allows him to lie about anyone who truthfully accuses him of misconduct. This is not an accurate statement of the law of defamation.

        ii.     The Statements Which Are Alleged To Be Defamatory Are "Of and Concerning" Plaintiff.

Under Pennsylvania's defamation statute, a plaintiff must demonstrate that the complained-of statements apply to her, i.e. the statements were "of and concerning" her. 42 Pa.C.S. § 8343(a)(3), (5). The test to apply in determining whether a statement is "of and concerning" plaintiff is to decide whether the "defamatory communication may reasonably be understood as referring to the plaintiff." *Mzamane*, 693 F. Supp.2d at 479 (citing *Farrell v. Triangle Publ'ns, Inc.*, 399 Pa. 102 (1960)). A defamed party need not be specifically named in a defamatory statement in order to recover if she is pointed to by description or circumstances tending to identify her. *Weinstein v. Bullick*, 827 F.Supp. 1193, 1199 (E.D. Pa. 1993). At the summary judgment stage, the court must find that the recipient could reasonably conclude that the publication refers to the plaintiff. *Id.*

While Ms. Hill was not specifically named, it is clear that she is a member of a small group of people to whom the Retaliatory Statements were addressed. The small group of people is referred to at paragraphs 34 and 35 of Plaintiff's Complaint. These individuals are identified by Cosby and his representatives specifically in terms of the timing of their statements. In this respect, it was eight (8) days earlier, on November 13, 2014, that Barbara Bowmen penned an op-ed in the Washington Post, entitled, in part, "Bill Cosby Raped Me . . ." It was then, over the

course of the next few days, that seven (7) other women (Renita and those identified in paragraph 35 of Plaintiff's Complaint) came forward and spoke publically about Cosby having assaulted them. The timing and substance of Singer's statement speaks directly about these women, stating "the new . . . claims from women who have come forward *in the past two weeks*" (emphasis added). This is a very specific reference to a very small and identifiable group of women, which includes the Plaintiff. The Statements were obviously addressed to the women who had come forward and revealed the actions Cosby took against them. The statements referred to a small enough group of people who were readily and easily identifiable so that the statement concerned each and every member of that group, including Ms. Hill. There is an objective, reasonable inference that a jury could conclude that the statement was "of and concerning" Plaintiff. See Restatement (Second) of Torts § 617 cmt. a (explaining that the question of whether a statement was "of and concerning plaintiff" is "ordinarily for the jury or trier of fact to determine").

> iii. *Plaintiff Was Not a Public Figure at the Time of the Publication of the Retaliatory Statement. Alternatively, She Explicitly Alleged That the Retaliatory Statements Were Made With Actual Malice.*

Cosby, in short, asserts that Plaintiff is a limited public figure because she voluntarily "thrust" herself into a public controversy concerning Cosby. As a public figure, he argues, Plaintiff must demonstrate actual malice on the part of Cosby in order to recover.

### a. Plaintiff is not a "public figure" and this is not a "public controversy"

A public figure is treated differently for purposes of defamation in part because such figure has greater access to effective communication. *McDowell v. Paiewonsky*, 769 F.2d 942, 948 (3d Cir. 1985). A person becomes a "limited" public figure when he or she becomes involved in a public controversy by his or her own accord. *Id.* A "public controversy" is a

10

dispute in which the outcome *affects the general public or some segment of it and must affect more than its immediate participants* (emphasis added). *Id.* (citing *Waldbaum v. Fairchild Publications, Inc*., 627 F.2d 1287, 1296 (D.C. Cir. 1980). Instances where a situation was deemed to be a public controversy have involved a large drug trafficking ring (*Marcone v. Penthouse Intern. Magazine for Men,* 754 F.2d 1072 (3d Cir 1985)), the awarding of hundreds of thousands of dollars in government contracts (*McDowell,* supra.), and a disputed confirmation hearing for the Secretary of Labor with reputed underworld ties (*Schiavone Const. Co. v. Time, Inc*., 847 F.2d 1069 (3d Cir. 1988)). All of these situations clearly impacted a substantial amount of the public. The Third Circuit has not adopted an explicit definition of what constitutes a public controversy, and the above definition is purely a product of Third Circuit decisions citing other authorities. As such, it is difficult to determine how many people must be affected in order for a controversy to be deemed "public." However, given the cited examples above of other public controversies, it appears to be a substantial amount much greater than the limited number here.

     Ms. Hill was not a "public figure" at the time of Cosby's statements, even in a limited sense. She did not have substantially "greater access to effective communication channels" than the general public, having only been interviewed once before the November 21st Martin Singer Statement. See *McDowell*, supra. The examples put forth above regarding what is deemed a "public controversy" all involved situations where a large amount of people had a legitimate stake in the outcome of the controversy. Contrastingly, the situation at hand only legitimately concerned the women making the allegations, Cosby, and Cosby's immediate family and business partners. The public at large did not have a stake in the outcome of the controversy outside of morbid curiosity.

11

> b.  **Plaintiff's complaint, read as a whole, explicitly alleges that the Statements were made with malice and/or reckless disregard for their truth.**

Even if Plaintiff is deemed to be a limited public figure and the situation to be a "public controversy," Plaintiff has adequately plead that the statements were made with actual malice. Actual malice also includes statements which are knowingly false at the time they are issue and/or made with reckless disregard for the truth. See *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964). Whether a statement contains actual malice is dependent on the defendant's attitude toward the truth of the information, not the malice toward the plaintiff as an individual. *Mzamane*, 693 F. Supp.2d at 505 (citing *Sprague v. Am. Bar Ass'n,* 276 F.Supp.2d 365, 377 (E.D. Pa. 2003). Deciding whether actual malice exists is a subjective inquiry as to the defendant's belief to be made by the finder of fact because a defendant will rarely admit that he or she knew the statements were not true. See *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

Cosby appears to be attempting to hide behind that fact that it was his agents and representatives that made two of the three statements. In order to sufficiently allege that the statements made by Cosby's representatives were made with actual malice or disregard for their falsity, Cosby asserts that Plaintiff must specifically allege that the representatives themselves acted with such malice or disregard for the truth. While such a position lacks legal support,[4] the Plaintiff's Complaint, when fairly read in its entirety, asserts that the statements at issue here were all made, by those who made them, with malice and/or reckless disregard for their truth. See *Yacoub v. Leigh Valley Medical Associates, P.C.*, 805 A.2d 579 (Pa.Super 2002) (When

---

[4] Rule 9(b) of the Federal Rules of Civil Procedure requires only that "[m]alice, intent, knowledge, and other conditions of a person's mind be alleged generally." See *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009) (citing F.R.C.P. 9(b)).  See also 5A C.Wright & A.Miller, Federal Practice and Procedure § 1301, p. 291 (3d ed. 2004)("[A] rigid rule require detailed pleading of a condition of mind would be undesirable . . . the general 'short and plain statement of the claim' mandate in Rule 8(a) . . . should control the second sentence of Rule 9(b)").

12

determining whether a paragraph has been stated with necessary specificity, such paragraph must be read in the context of other allegations and factual pleading in the complaint).

For example, in her Complaint, Plaintiff asserts directly and by inference that Cosby also acted through his agents and representatives. See *Plaintiff's Complaint,* ¶¶ 39, 45, 46. Most significantly, paragraph 53, which is also incorporated into all of subsequent counts of Plaintiff's Complaint (see ¶¶ 57, 64), states the following:

> 53. These Statements constitute defamation *per se*, as they were broadcast by Defendant with actual malice. In the alternative, said Statements were made with wanton disregard for the truth and welfare of the Plaintiff.

Plaintiff, throughout her Complaint, alleges that all three statements referenced in paragraph 53 above, were "broadcast by the Defendant," in one instance by Cosby himself, and on two other occasions by other individuals acting on his behalf. See ¶¶ 39, 45, 46. Therefore, a fair, contextual reading of paragraph 53 necessarily leads to the conclusion that Plaintiff has claimed that when the statements were broadcasted, both by the Defendant, individually, and on his behalf, they were made with actual malice and/or reckless disregard for their truth. *Id.*

In the alternative, if this Honorable Court should so find that Plaintiff's Complaint lacks sufficient specificity regarding the *mens rea* of Cosby's representatives or that it lacks a requisite pleading of "actual malice," Plaintiff hereby requests leave to amend her Complaint to adhere to such standards. Such leave should be granted unless an amendment would be futile. See *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). The lack of specificity and lack of an explicit pleading of "actual malice" is insufficient grounds for a full dismissal. See *Earley v. Gatehouse Media Pennsylvania Holdings, Inc.,* 2013 WL 5466149, at *7 (M.D. Pa. Sept. 30, 2013).

### C.     COUNT II: Plaintiff's False Light Claim is Sufficiently Plead in Her Complaint.

In addition to the element of malice, the tort of false light also entails publicity that unreasonably place a person in false light before the public. *Strickland v. University of Scranton*, 700 A.2d 979, 987 (1997). Plaintiff agrees that the Pennsylvania courts apply the same analysis for both defamation and false light. This includes the assertion that actual malice need only be shown if the Plaintiff is a public figure and/or the controversy is a public one. Count II should not be dismissed with prejudice for the same reasons as Count I. In the alternative, Plaintiff seeks leave to amend.

### D.     COUNT III:  Defendant's Statements Were Extreme and Outrageous.

The tort of intentional infliction of emotional distress ("IIED") requires that the conduct be of such an outrageous and extreme character that the average member of the community would exclaim "Outrageous!" upon hearing a recitation of the facts. *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173 (Pa. Super 1996).

Cosby lists several cases where an IIED claim has been upheld, implying that the current situation does not rise to the proper level. He states that a "general response to sexual assault allegation" does not constitute a proper IIED claim because Pennsylvania has yet to uphold such a claim in a defamation context. However, just because Pennsylvania courts have not allowed damages for IIED in defamation cases to this date does not mean that it is precluded from doing so. Plaintiff has alleged severe emotional distress. It is also alleged that Cosby intentionally or with gross negligence caused such emotional distress. If Cosby is found to have done the things he is accused of doing in Plaintiff's Complaint, and construing such allegations in "a light most favorable" to Plaintiff, society would likely find Cosby's actions outrageous and despicable. See *Rocks,* 686 F.2d 645. Ms. Hill, after keeping quiet for thirty years about a traumatic sexual

14

assault experience at the hands of Cosby, finally worked up the courage to come forward and share her story in support of other women who experienced a similar ordeal. Within twenty-four hours, she was being called a liar and an extortionist by Cosby's attorneys and representatives. Public policy favors of protecting individuals that have been the victim of sexual abuse to come forward and to protect them against stigma and attack. For example, judicial policies and evidentiary rules concerning rape shield statutes, policies protecting the identities of victims of sexual abuse, etc. Plaintiff's allegations are that Cosby initiated a campaign of retaliation to such a victim. When viewed in the light most favorable to the Plaintiff, such claims can undoubtedly be said to inspire outrage in the community to which she belongs.

## V.     CONCLUSION

The Defendant's motion to dismiss for failure to state a claim fails to meet the burden of showing that no claim has been presented in the Complaint. The Complaint, when taken as a whole, sufficiently makes out claims for Defamation/Defamation *Per Se,* False Light, and Intentional Infliction of Emotional Distress. For the reasons set forth above, this Honorable Court should deny Defendant's Motion to Dismiss.

Respectfully submitted,

By:  /s/ George M. Kontos
George M. Kontos, Esquire
gkontos@kontosmengine.com

By: /s/ Katie A. Killion
Katie A. Killion, Esquire
kkillion@kontosmengine.com

KONTOS MENGINE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15219
*Attorneys for Plaintiff*

By: /s/ Kenneth J. Haber
Kenneth J. Haber, Esquire
khaberdrh@yahoo.com

DIFENDERFER ROTHMAN & HABER
Mitchell Building
304 Ross Street, Suite 400
Pittsburgh, PA 15219
*Attorneys for Plaintiff*

16

**CERTIFICATE OF SERVICE**

We, George M. Kontos, Esquire and Katie A. Killion, Esquire, hereby certify that a true and correct copy of the foregoing Brief In Support Of Plaintiff's Response To Defendants Motion To Dismiss was filed on December 29, 2015 with the Clerk of Court using the CM/ECF system and thereby becoming immediately available to the following:

Efrem M. Grail, Esquire
Brian C. Bevan, Esquire
The Grail Law Firm
421 Seventh Avenue #200
Pittsburgh, PA 15219
egrail@graillaw.com
bbevan@graillaw.com
*Defendant's Counsel*

Christopher Tayback, Esquire
Marshall M. Searcy, III, Esquire
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
*Defendant's Counsel*

By: /s/ George M. Kontos
George M. Kontos, Esquire
gkontos@kontosmengine.com

By: /s/ Katie A. Killion
Katie A. Killion, Esquire
kkillion@kontosmengine.com

KONTOS MENGINE LAW GROUP
603 Stanwix Street
Two Gateway Center, Suite 1228
Pittsburgh, PA 15219
*Attorneys for Plaintiff*

By: /s/ Kenneth J. Haber
Kenneth J. Haber, Esquire
khaberdrh@yahoo.com

17

DIFENDERFER ROTHMAN & HABER
Mitchell Building
304 Ross Street, Suite 400
Pittsburgh, PA 15219
  *Attorneys for Plaintiff*