IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RENITA HILL,

                Plaintiff,                 15cv1658

                              **ELECTRONICALLY FILED**

           v.

WILLIAM HENRY COSBY, JR., *an
individual also known as BILL COSBY*,

                Defendant.


**MEMORANDUM OPINION**

The very detailed and complete Complaint in this case alleges that by making or causing to be made three very discreet statements: (1) Defendant defamed Plaintiff, (2) Defendant cast Plaintiff in a false light, and (3) Defendant intentionally inflicted emotional distress upon Plaintiff.[1]  Presently before the Court is a Motion to Dismiss and Brief in Support filed by Defendant alleging that no justiciable claim or controversy exists.  Doc. nos. 3, 4.  Plaintiff filed a Response and Brief in Opposition to the Motion to Dismiss.  Doc. nos. 7, 11.  Defendant filed a Reply Brief.  Doc. no. 18.  The matter is now ripe for adjudication.  For the reasons set forth herein, the Court will grant the Motion to Dismiss the Complaint.


**I. Standard of Review - Rule 12(b)(6)**

        **I. Standard of Review - Rule 12(b)(6)**

Under Rule 12(b)(6), a Complaint must be dismissed for "failure to state a claim upon which relief can be granted."  Detailed factual pleading is not required – Rule 8(a)(2) calls for a

---

[1] This case was removed to this Court by Defendant.  Plaintiff originally filed her lawsuit in the Court of Common Pleas of Allegheny County, Pennsylvania (case no. GD-15-18156).   Plaintiff did not challenge the removal.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

"short and plain statement of the claim showing that the pleader is entitled to relief" – but a Complaint must set forth sufficient factual allegations that, taken as true, set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining the plausibility of an alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a Complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) ("[W]here there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

When adjudicating a motion to dismiss for failure to state a claim, the Court must view all of the allegations and facts in the complaint in the light most favorable to the plaintiff, and

must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)).  However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint.  *See Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions").  "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8.  Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements.  *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss.  *Fowler,* 578 F.3d at 212.

In short, a Motion to Dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him/her to relief.  *Twombly*, 550 U.S. at 563 n.8.


**II.    Discussion**

As noted above, Plaintiff's Complaint alleges three causes of action against Defendant: (1) defamation, (2) false light, and (3) intentional infliction of emotional distress.  Defendant argues that each of these three claims must be dismissed because the claims are legally unsustainable and/or are legally insufficient.  Each claim will be addressed, seriatim.

A.      **Defamation**

1.      **Pennsylvania Law**

Under Pennsylvania law – the law applicable to this case[2] –  a plaintiff must eventually prove the following seven elements to state a claim for defamation: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff;  (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.  42 Pa.C.S.A. § 8343. There is ample case law emanating from Pennsylvania state courts, as well as the United States District Courts, applying Pennsylvania substantive law which defines these elements.  A brief summary of a portion of that body of law follows.

In an action for defamation, it is the Court's duty to make the threshold determination whether the challenged statements are capable of a defamatory meaning.  *Thomas Merton Center v. Rockwell International Corp.*, 442 A.2d 213 (Pa. 1981), *cert. den.*, 457 U.S. 1134 (1982); *Byars v. School Dist. of Phila.*, 942 F.Supp.2d 552 (Pa. E.D. 2013) ("Whether a statement is capable of a defamatory meaning is a question of law for the court.").  If the communication could be understood as defamatory, then it is for the jury to determine whether it was so understood by the recipient.  *Agriss Roadway Exp., Inc*.,  483 A.2d 456 (Pa. Super. 1984).

For purposes of the threshold determination whether a communication could be understood as defamatory, it is not necessary for the communication actually to have caused harm to a plaintiff's reputation; defamatory character depends on the general tendency of the

---

[2] The parties agree, as does this Court, that Pennsylvania substantive law applies to the claims asserted in this case. Pennsylvania has a substantial interest in this litigation as Plaintiff was (and is) domiciled in Pennsylvania at the time the allegedly defamatory communications were published, and thus Plaintiff has a reputational interest to protect in that forum.

words to have such an effect. *Id., citing Corabi v. Curtis Publishing Co., 273 A.2d 899* (Pa. 1971); *Miller v. Hubbard*, 207 A.2d 913 (Pa. Super. 1965); Restatement, supra, § 559 Comment d. However, it is not sufficient for the words to merely embarrass or annoy the plaintiff. *Beckman v. Dunn*, 419 A.2d 583 (Pa. Super. 1980). A communication is defamatory if it tends to blacken a person's reputation or expose that person to public hatred, contempt, or ridicule, or injure the person in her business or profession. *Livingston v. Murray,* 612 A.2d 443, 447 (Pa. Super. 1992), *alloc. den*., 617 A.2d 1275 (Pa. 1992). Defamatory communications tend to lower a person in the estimation of the community, deter third persons from associating with him or her, or adversely affect the person's fitness for the proper conduct of his or her lawful business or profession. *Id.*

A plaintiff claiming defamation need not be specifically named in the communication, if the plaintiff is pointed to by description or circumstances tending to identify him or her. *Cosgrove Studio & Camera Shop, Inc. v. Pane*, 182 A.2d 751, 753 (Pa. 1962). The test is "whether the defamatory communication may reasonably be understood as referring to the plaintiff." *Zerpol Corp. v. DMP Corp.*, 561 F.Supp. 404, 410 (E.D. Pa. 1983) (citing *Farrell v. Triangle Publ'ns, Inc.*, 159 A.2d 734 (Pa. 1960)).

The Pennsylvania Superior Court further explained in *Dougherty v. Boyerton Times*, 547 A.2d 778 (Pa. Super. 1988):

> The nature of the audience is a critical factor in determining whether a statement is capable of defamatory meaning. . . . Injury to reputation is judged by the reaction of other persons in the community and not by the party's self-estimation. *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983). Specifically, a communication is defamatory if it "ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his lawful business, trade or profession." *Baker v. Lafayette College*, 350 Pa.Super. 68, 76, 504 A.2d 247, 251 (1986) *quoting Thomas Merton Center, supra*, 422 A.2d at 216.

*Id.* at 783.

Pennsylvania case law also has concluded that only statements of fact can afford a basis for a defamation action. Expressions of opinion cannot. Statements of fact and opinion intermingled can give rise to a claim based on the factual portions of the statement. See *Dougherty,* 547 A.2d at 782–83 (1988) and Restatement (Second) of Torts, § 556.

Whether a particular statement constitutes a fact or an opinion is a question of law for the trial court to determine. *Veno v. Meredith*, 515 A.2d 571, 575 (Pa. Super. 1986) *citing Braig v. Field Communications*, 456 A.2d 1366, 1372 (Pa. Super. 1983), *cert. den.,* 466 U.S. 970 (1984). In *Braig,* the Superior Court of Pennsylvania adopted Section 566 of the Restatement (Second) of Torts, entitled Expression of Opinion, which provides as follows:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

Comment (b) to § 566 of the Restatement explains the two types of expressions of opinion:

> (1) The pure type - which "occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character."
>
> (2) The mixed type - which "while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication. Here the expression of opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant."

Restatement (Second) of Torts, § 566, comment (b). Comment (c) of § 566 explains the constitutional significance of the distinction explained in comment (b):

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed

> facts on which the opinion is based, is treated differently.  The difference lies in the effect upon the recipient of the communication.  In the first case, the communication itself indicates to him that there is no defamatory factual statement.  In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability.  The defendant cannot insist that the undisclosed facts were not defamatory but that he unreasonably formed the derogatory opinion from them.  This is like the case of a communication subject to more than one meaning.  As stated in § 563, the meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express.

Restatement (Second) of Torts, § 566, comment (c).

Thus, the trial court must determine whether the challenged statement is an opinion or a fact.  If the challenged statement is an opinion, it is actionable only if it "may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion."  *Veno,* 515 A.2d at 575, *quoting Beckman,* 419 A.2d at 587, *citing* Restatement (Second) of Torts, § 566.

With these principles in mind, the Court proceeds to examine the three challenged statements set forth in the instant case.

### 2.        Plaintiff's Allegations Related to Defamation

Turning to the detailed and specific facts alleged by Plaintiff, her Complaint first notes that Plaintiff gave an interview with a reporter from KDKA on November 20, 2014 wherein she accused Defendant of sexual abuse and rape (doc. no. 1-3, ¶ 38).  Plaintiff asserts that as a result of this interview, three separate communications (either made by Defendant, or on Defendant's behalf) led to her defamation claim.

The "Martin Singer Statement" is the first of the three communications which Plaintiff alleges is defamatory.  In it, Plaintiff alleges that a day or two after she gave her interview, the Washington Post published a response whereby "[Defendant], aided by his attorney, Martin

Singer, issued [a] statement . . ." which set forth, in relevant part, that ". . . new, never-before-heard claims from women[,] who have come forward in the past two weeks with unsubstantiated, fantastical stories . . . have escalated far past the point of absurdity.  These brand new claims about alleged decades-old events are becoming increasingly ridiculous . . . . [I]t makes no sense that not one of these new women who just came forward for the first time ever asserted a legal claim back at the time they allege they had been sexually assaulted."  The remainder of the Martin Singer Statement chastises "the media" for failing to corroborate the new "unsubstantiated stories" before publishing their accounts.[3]

Second, with respect to the "Florida Today Statement," Plaintiff alleges that the same day the Martin Singer Statement was released, Defendant himself was interviewed by Florida Today, and during that interview he declined to respond to the "innuendos" that had been made about him and stated that "[p]eople should fact-check".[4]

Third, with respect to the "Camille Cosby Statement," Plaintiff alleges that on December 15, 2014, a letter written by Defendant's wife, Camille Cosby, was published by the Washington Post on Defendant's behalf alleging that the news media failed to "vet" her husband's accusers (of which Plaintiff was one) before publishing or airing the accusers' stories.[5]

### 3.    Analysis

Defendant's Brief in Support of its Motion to Dismiss contends that none of the three statements are actionable as defamation.  Doc. no. 4, p. 8.  Plaintiff's Brief in Opposition to Motion to Dismiss contends that the sum of the three statements "share a common thread of relying on undisclosed, defamatory facts to support the assertions each statement makes."  Doc. no. 11, p. 7.  Plaintiff contends that "[i]f it is reasonable to infer from the statements that

---

[3] The full text of the Martin Singer Statement is set forth in the Complaint at doc. no. 1-3, ¶ 38.
[4] The full text of the Florida Today Statement is set forth in the Complaint at doc. no. 1-3, ¶ 41.
[5] The full text of the Camille Cosby Statement is set forth in the Complaint at doc. no. 1-3, ¶ 42.

Defendant was actively and knowingly calling Plaintiff a liar and an extortionist, than [sic] the statements are capable of defamatory meaning."  Id.

After careful consideration of each of the three statements set forth in the Complaint, and after considering the arguments advanced by each party to this lawsuit as to how those statements could or could not be defamatory under Pennsylvania law, this Court finds that none of the three statements are defamatory.

### a.        The Martin Singer Statement

The Martin Singer Statement is a pure opinion.  Per Plaintiff's Complaint, the Martin Singer Statement was made "in response" to Plaintiff's interview wherein she accused Defendant of sexually abusing and raping her.  Doc. no. 1-3, ¶ 38.  This statement suggests that "new" claims asserted by "new" women – which presumably included Plaintiff's allegations of sexual abuse and rape – escalated beyond "the point of absurdity."  Id.  Simply put, taking all well pled facts as true, and viewed in the light most favorable to Plaintiff, the Martin Singer Statement describes the Plaintiff's and other women's allegations against Defendant as "beyond absurd" and labels their accounts of past events as "unsubstantiated, fantastical stories."

The entire Martin Singer Statement (as quoted in Plaintiff's Complaint) is an opinionated statement; but, it is not one which implies or alleges that undisclosed, defamatory facts serve as the basis for the opinion.  It was a statement, made by Defendant's attorney, in response to serious allegations concerning Defendant's alleged criminal behavior.  As noted above, in Pennsylvania, an opinion cannot be defamatory unless it "may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Remick v. Manfredy,* 238 F.3d 248, 261 (3d Cir. 2001).

Any attorney for any defendant must advance a position contrary to that of the plaintiff. Here, Plaintiff publicly claimed she was sexually abused and raped by Defendant – which is her position; and Defendant, through his attorney, publicly denied those claims by saying the "claims" are unsubstantiated and absurd – which is his legal position.  This sort of purely opinionated speech articulated by Defendant's attorney is protected and not actionable as defamatory speech.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974) ("Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.  But there is no constitutional value in false statements of fact.").  This Court does not find the Martin Singer Statement includes language which implies the existence of undisclosed defamatory facts about Plaintiff.  As such, this Court considers the Martin Singer Statement to be purely an opinion proffered by an attorney who, while actively engaged in the zealous representation of his client, did not cross the line and defame the Plaintiff.  Accordingly, the Court finds that the Martin Singer Statement fails to support Plaintiff's claim for defamation.

### b.    The Florida Today Statement

Next, turning to the Florida Today Statement, this Court also finds that this statement likewise is not defamatory.  In this statement, Defendant refuses to respond to "innuendos"  and invites "people" to "fact-check." Doc. no. 1-3, ¶ 41.  Although Pennsylvania case law is clear that a plaintiff claiming defamation need not be specifically named in the defamatory statement, the Florida Today Statement fails to even generally refer to the group of women who publicly asserted their allegations of sexual misconduct against Defendant.

However, viewing this statement in a light most favorable to Plaintiff, given the timing of this statement, the Court will assume, *arguendo,* that Defendant was referring to Plaintiff's and

other women's accusations as "innuendos," and was encouraging the public to "fact-check" the claims of these women.  This is a far cry from labelling Plaintiff (and the other women who have made similar public assertions) as liars or extortionists.

Pennsylvania law requires that Defendant's words have the general tendency to cause harm to Plaintiff's reputation.  It is not sufficient if the words are merely embarrassing or annoying to Plaintiff.  The words uttered by Defendant, and made public in his Florida Today Statement, which invite the public to conduct its own investigation and draw its own conclusions about the "innuendos," *i.e.,* the alleged sexual misconduct of Defendant, do not have the general tendency to cause harm to anyone's reputation and, thus, do not rise to the level of defamatory comments.

### c.      The Camille Cosby Statement

Finally, the Camille Cosby Statement fails to meet Pennsylvania's legal requirements necessary to assert a claim for defamation.  The majority of this statement expresses the speaker's opinion that the media outlets violated their own code of journalistic integrity by publishing Plaintiff's (and the other women's) accounts of the alleged sexual abuse without "vetting" these accusers.  This statement targets the media as much, and arguably more so, than the accusers, by claiming that the media failed to properly source or "vet" Plaintiff's and the other women's stories before publishing them.  The accusation made by Camille Cosby appears to target the media for failing to get a second source before printing Plaintiff's, and/or other women's very serious accusations regarding Defendant.[6]

---

[6] Even assuming that the "vetting" referred to Plaintiff herself, and not Plaintiff's "story," the Camille Cosby Statement suggests that the media did not do its job of investigating Plaintiff prior to publishing Plaintiff's account of the alleged sexual abuse.  Even construed in a light most favorable to Plaintiff, the Camille Cosby Statement does not infer that there is some undisclosed fact or facts about this specific Plaintiff which Camille Cosby herself knew.  Moreover, although Plaintiff has pled that Camille Cosby was Defendant's business manager, and claims that Camille Cosby's statements could be attributable to

In addition, the timing of this statement is further removed from the timing of Plaintiff's own accusations.  This Court does not find that this Statement could be read to infer that Plaintiff is a liar or an extortionist and it does not possess the general tendency to cause harm to Plaintiff's reputation.  Thus, this Statement fails to support a claim for defamation.

### d.  All Three Statements Together

Finally, Plaintiff's Brief in Opposition to the Motion to Dismiss contends that the sum of the three statements "share a common thread of relying on undisclosed, defamatory facts to support the assertions each statement makes."  Plaintiff contends that "[i]f it is reasonable to infer from the statements that Defendant was actively and knowingly calling Plaintiff a liar and an extortionist, than [sic] the statements are capable of defamatory meaning."  Doc. no. 11, p. 7. Even considering these three statements together as a combined, single statement, this newly "conjoined" statement does not lead to an inference that Plaintiff  is a "liar and an extortionist." Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for defamation will be granted.

### B.  False Light

Under Pennsylvania law, a claim for false light is one of four torts which can support a claim for invasion of privacy.  *Santillo v. Reed*, 634 A.2d 264 (Pa. Super. 1993).  To establish a false light invasion of privacy claim, Pennsylvania law requires a plaintiff to show that a highly offensive false statement was publicized by a defendant with knowledge or in reckless disregard of the falsity.  *Id., citing, Neish v. Beaver Newspapers, Inc.*, 581 A.2d 619, 624 (Pa. Super. 1990), *alloc. den.*, 593 A.2d 421 (Pa. 1991).

---

Defendant, this is a legal conclusion which Plaintiff draws with no factual support.  Thus, even if the Camille Cosby Statement could be read to infer that Camille Cosby had undisclosed defamatory facts related to this specific Plaintiff, the Court has no basis upon which it can legally conclude that this Statement can be attributed to Defendant or was authorized by him.

Pennsylvania Courts have relied upon the Restatement (Second) of Torts § 652E for

distinguishing a false light claim from a defamation claim.  Comment "b." to this Section of the

Restatement reads as follows:

> b. Relation to defamation. The interest protected by this Section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as he is.  In many cases to which the rule stated here applies, the publicity given to the plaintiff is defamatory, so that he would have an action for libel or slander under the rules stated in Chapter 24.  In such a case the action for invasion of privacy will afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity.
>
> It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed.  It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position.  When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation.

Restatement (Second) of Torts § 652E, comment b.  Comment "c." defines the term

"highly offensive" in this manner:

> c. Highly offensive to a reasonable person.  The rule stated in this Section applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person.  In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.  Complete and perfect accuracy in published reports concerning any individual is seldom attainable by any reasonable effort, and most minor errors, such as a wrong address for his home, or a mistake in the date when he entered his employment or similar unimportant details of his career, would not in the absence of special circumstances give any serious offense to a reasonable person.  The plaintiff's privacy is not invaded when the unimportant false statements are made, even when they are made deliberately.  It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

Restatement (Second) of Torts § 652E, comment c.

In the instant case, none of the three statements described above can be said to be "highly offensive" as that term is defined.  Plaintiff's Complaint asserts that the three statements were "highly offensive" (see doc. no. 1-3, ¶ 58), but this is a legal conclusion.  The Complaint is otherwise devoid of any facts which support Plaintiff's legal conclusion that the three statements are "highly offensive."

Moreover, none of the three statements specifically malign Plaintiff individually.  Even if Plaintiff need not be specifically named in the statement which forms the basis for a false light claim (as is true for a defamation claim) in order to prove that the statement cast her in a false light, Plaintiff must still show that the conduct was "highly offensive" to her, as a reasonable person.  None of the three statements provide a factual basis upon which this Court could find that "serious offense" could reasonably have been expected to be taken by a reasonable person in Plaintiff's position.  As such, Plaintiff's allegations set forth in her Complaint fall short of providing a basis for her claim for false light, and thus, the Motion to Dismiss Plaintiff's false light claim will be granted.

### C. Intentional Infliction of Emotional Distress

The Superior Court of Pennsylvania in *Britt v. Chestnut Hill Coll.* held as follows:

> Intentional infliction of emotional distress is defined in the Restatement (Second) of Torts as follows:
>
> > One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> Restatement (Second) of Torts, § 46(1).

14

> In addition to requiring that a plaintiff establish that the conduct complained of was outrageous, the Pennsylvania Supreme Court has required that the plaintiff present competent medical evidence to support the claim.  In *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987), our supreme court affirmed this court's order sustaining a compulsory nonsuit for a claim of intentional infliction of emotional distress.  Initially, the court noted that while it had previously acknowledged Section 46, it had never "had occasion to specifically adopt section 46 as the law in Pennsylvania".  *Id.* With that in mind, the court ultimately held that "if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky*, 515 Pa. at 197, 527 A.2d at 988 (1987).  Applying that standard to the facts before it, the supreme court sustained the compulsory nonsuit because the record revealed that neither appellant had sought medical treatment and that they failed to support their claim with competent medical evidence.

*Britt*, 632 A.2d 557, 561 (Pa. Super. 1993).   The Supreme Court of Pennsylvania has held that in order to sustain a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant "has acted with intent which is tortious or even criminal, or that he had intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  *Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998).

Turning to the facts of this case, Plaintiff's claim for intentional infliction of emotional distress ("IIED") turns on the alleged facts that Defendant drugged her, sexually abused and raped her, and then called her a "liar and extortionist" after she publicly disclosed what he had allegedly done to her. Doc. no. 1-3, ¶¶ 65-66.   The three statements referenced in the Complaint, only one of which was uttered by Defendant himself, form the basis of her IIED claim.  Two of these statements – the Martin Singer Statement and the Camille Cosby Statement – were not made by Defendant, the alleged attacker.  Even assuming those two statements could be attributable to Defendant, through his agents – his attorney and wife – these three statements

would have to expressly and/or impliedly deny that Defendant sexually abused and raped Plaintiff.

While none of the three statements go so far as to expressly deny that Defendant sexually abused and raped Plaintiff, read in a light most favorable to Plaintiff, this Court will consider whether they impliedly deny that Defendant did so.  Assuming, *arguendo,* that the statements deny Defendant sexually abused and raped Plaintiff, the question next becomes whether that language so outrageous, atrocious, and contemptable that those statements could give rise to an IIED claim.  The Court finds that the language does not rise to the level of outrage necessary to sustain an IIED claim under Pennsylvania law.

In addition, the Court notes – as do <u>both</u> Plaintiff and Defendant in their respective briefs – that no Pennsylvania case law exists upholding an IIED claim which has been predicated upon defamatory language.  See doc. no. 4, p. 14 and doc. no. 11, p. 14.  Plaintiff argues that simply because Pennsylvania has not yet allowed such a cause of action, it has not prohibited one either. Doc. no. 11, p. 14.  This Court takes no position on what Pennsylvania Courts may or may choose not do with respect to any future IIED claim predicated on an alleged defamatory statement(s).  However, this Court does not find that the type of denials published in the three statements rise to the level of atrocious conduct necessary to preserve an IIED claim under Pennsylvania law.  Without any legal support suggesting that an IIED claim can be predicated upon alleged defamatory language, and after concluding as a matter of law that the language itself is not defamatory, this Court must dismiss Plaintiff's IIED claim.

III.     Conclusion

As explained in detail above, each of the three claims asserted by Plaintiff will be dismissed.  Each of the claims as asserted by Plaintiff in her Complaint fails as a matter of law. Even assuming the veracity of all that Plaintiff has pled here, the three statements do not support a claim for defamation as defined by Pennsylvania law.  Likewise, the Plaintiff's Complaint fails to establish viable claims for false light or intentional infliction of emotional distress as those torts are defined by Pennsylvania law.

Typically, the Court allows a plaintiff to amend a Complaint that is legally deficient unless doing so would be futile.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (" . . . a district court may exercise its discretion and deny leave to amend on the basis of . . . futility.").   Given the state of the law on this matter, as will be discussed in greater detail below, any amendment would be futile, and thus Defendant's Motion to Dismiss will be granted with prejudice.

The Complaint in this case is very detailed and complete, drafted by experienced counsel. The three complained-of Statements are set forth in great detail.  An Amended Complaint could not add anything to these three Statements.  The Court is confident that if counsel for Plaintiff had additional complained-of statements, those additional statements would have been made part of the Complaint.

Accordingly, the Court finds that allowing Plaintiff time to amend her Complaint would be futile, and thus, the Court will grant Defendant's Motion and dismiss this case with prejudice. An appropriate Order shall follow.


s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

17

cc:     All Registered ECF Counsel and Parties